IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:06-HC-2222-BR

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | <u>ORDER</u> |
| v. | ) | |
| | ) | |
| ANDREW RED STAR, | ) | |
| | ) | |
| Respondent. | ) | |

On 27 December 2006, petitioner United States of America ("the government") initiated this proceeding seeking to have respondent Andrew Red Star ("Red Star") civilly committed as a sexually dangerous person under the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), codified at 18 U.S.C. §§ 4247-4248. Pursuant to 18 U.S.C. § 4247(d), the court conducted an evidentiary hearing in this matter on 17 October 2011.

## **I. BACKGROUND**

Red Star was 37 years old at the time of the evidentiary hearing. He has been incarcerated since the age of 21 after pleading guilty to two counts of aggravated sexual assault by force in 1996. (Gov't Ex. 23.)[1] The conduct included the rape of a 66-year-old disabled man whose home Red Star had entered through an unlocked door. (Gov't Exs. 2 at 7-9; 4 at 16; 21 at 2-3.) Later the same day, Red Star entered a woman's home and sexually assaulted her by grabbing her crotch. (<u>Id.</u>) She was able to grab a hammer and force him out of her home. (<u>Id.</u>)

---

[1] In relaying the background information in this case, the court cites mainly to the facts presented by the government, as the government bears the burden of proof in this proceeding. Unless otherwise noted, the facts in this section are not in dispute.

Red Star pled guilty to these crimes, but he claims that he has little or no recollection of the events. (Gov't Ex. 4 at 17; Resp. Ex. 2 at 7.) He was sentenced to a term of 151 months imprisonment on each count to run concurrently, followed by ten years of supervised release. (Gov't Ex. 23.)

In addition to the offenses which led to his present incarceration, Red Star's prior history of sexual crimes includes a 1993 guilty plea in tribal court to charges including sexual assault and sexual intercourse without consent with a female under the age of 16. (Gov't Exs. 2 at 4-5; 4 at 15; 13.) He received a sentence of six months of probation and a fine. (Id.) Furthermore, in 1995, Red Star committed a series of sexual offenses during a single day. (Gov't Exs. 2 at 5-7; 4 at 15-16; 14.) His eight female victims varied in age, ranging from 12 years old to 49 years old. (Id.) Several of the victims were grabbed in their private areas at various locations in Billings, Montana. (Id.) Red Star pled guilty to seven counts of sexual assault and one count of attempted assault. (Id.) He was sentenced to fifteen days imprisonment for each count, with an additional suspended sentence of six months of incarceration. (Gov't Ex. 2 at 6; Resp. Ex. 2 at 6.)

Additionally, Red Star has been charged with a number of non-sexual offenses including, *inter alia*, disorderly conduct, resisting arrest, maintaining a public nuisance, possession of alcohol, and theft. (Gov't Exs. 2 at 18-21; 4 at 14-15.) He served brief periods in jail and received fines in relation to many of those crimes. (Id.) He was also involuntarily committed for alcohol treatment in 1993. (Gov't Exs. 2 at 18-19; 12.)

During his federal incarceration, Red Star has had a very extensive history of misconduct, including possessing sexually explicit photographs, exposing himself and making

2

Case 5:06-hc-02222-BR-JG   Document 110   Filed 01/03/12   Page 2 of 10

sexual threats to female staff, as well as sexual contact, both consensual and nonconsensual,[2] with other inmates. (See, e.g., Gov't Exs. 2 at 25-40; 4 at 17-18; 29-32, 40, 42, 46-47, 50, 52, 54.) There has been a marked decline in Red Star's misconduct following a change to his medication regimen in November 2009. (Gov't Ex. 4 at 8-9; Gov't Proposed Findings of Fact & Conclusions of Law, DE # 98, at 14 ¶ 15.)

## II. DISCUSSION

The Adam Walsh Act provides for the civil commitment of "sexually dangerous person[s]." 18 U.S.C. § 4248. Under 18 U.S.C. § 4247(a)(5), a "sexually dangerous person" is one "who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." A person is "sexually dangerous to others" if he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6).

Under the Adam Walsh Act, the government has the burden of proving that Red Star is sexually dangerous by clear and convincing evidence. 18 U.S.C. § 4248(d). The clear and convincing evidence standard is an "'intermediate standard,'" lying somewhere "'between preponderance of the evidence and proof beyond a reasonable doubt.'" United States v. Hunt, 643 F. Supp. 2d 161, 179 (D. Mass. 2009) (quoting Addington v. Texas, 441 U.S. 418, 425 (1979)). The government must produce "'[e]vidence indicating that the thing to be proved is highly probable or reasonably certain.'" Id. (alteration in original) (quoting Black's Law

---

[2] Although Red Star admits to having had various sexual partners while incarcerated, he denies ever having forced anyone into sexual contact with him. (Resp. Ex. 2 at 9; Resp.'s Proposed Findings of Fact & Conclusions of Law, DE # 99, at 9 ¶ 26.)

3

Dictionary 596 (8th ed. 2004)).

Thus, in order to prove that Red Star is a "sexually dangerous person," the government must prove three elements by clear and convincing evidence: (1) that Red Star engaged in or attempted to engage in sexually violent conduct or child molestation; (2) that Red Star suffers from a serious mental illness, abnormality, or disorder; and (3) that, as a result of the serious mental illness, abnormality, or disorder, Red Star would have serious difficulty in refraining from sexually violent conduct or child molestation if he were to be released. See 18 U.S.C. § 4247(a)(5)-(6); 18 U.S.C. § 4248.

Three experts testified at the evidentiary hearing. Amy Phenix, Ph.D., and Lela Demby, Ph.D., testified on behalf of the government. Leonard A. Bard, Ph.D., testified on behalf of Red Star as an additional examiner selected pursuant to 18 U.S.C. § 4247(b) (see DE # 49). The only other witnesses who testified were Red Star, who was called as a witness during the government's case-in-chief, and Thomas Owens, M.D., who testified on behalf of Red Star. Dr. Owens is a general psychiatrist on staff at the Federal Medical Center in Butner, North Carolina, and he is currently Red Star's treating physician.

A. Past Violent Sexual Conduct

The court finds that the first criterion for commitment under the Adam Walsh Act, that Red Star has "engaged or attempted to engage in sexually violent conduct or child molestation" in the past, is satisfied. 18 U.S.C. § 4247(a)(5). The experts in this case all agree that Red Star committed several acts of sexually violent conduct (see Gov't Exs. 2 at 4; 4 at 3; Resp. Ex. 2 at 14-15), and Red Star does not dispute that the government has proven the first element by clear and convincing evidence (Resp.'s Proposed Findings of Fact and Conclusions of Law, DE # 99,

4

at 16 ¶ 51).

B. <u>Serious Mental Illness, Abnormality, or Disorder</u>

To meet its burden of establishing that Red Star is "sexually dangerous to others," the government must also prove that Red Star "suffers from a serious mental illness, abnormality, or disorder." 18 U.S.C. § 4247(a)(6). During his long period of incarceration, Red Star has been diagnosed with a variety of mental disorders. Although the experts in this case disagree somewhat regarding Red Star's exact diagnosis,[3] the court agrees with the psychiatric testimony concluding that Red Star currently suffers from Bipolar I Disorder,[4] which is a serious mental disorder. See <u>Diagnostic and Statistical Manual of Mental Disorders</u> at 382-83 (4th ed. text rev. 2000). The court also credits the testimony of all three experts, who agree that Red Star suffers from Alcohol Dependence, Cannabis Dependence, and some type of personality disorder. Furthermore, Red Star does not dispute that the government has proven this element. (Resp.'s Proposed Findings of Fact and Conclusions of Law, DE # 99, at 16 ¶ 52.) Accordingly, the court concludes that the government has met its burden of proving the second element under the Adam Walsh Act by clear and convincing evidence.

---

[3] Dr. Phenix has diagnosed Red Star with Paraphilia Not Otherwise Specified, Non-Consent; Alcohol Dependence, in a controlled Environment; Cannabis Dependence, in a controlled environment; Depressive Disorder Not Otherwise Specified; Antisocial Personality Disorder; Borderline Personality Disorder; and Fetal Alcohol Spectrum Disorder (rule out, by history). (Gov't Ex. 2 at 50.) Dr. Demby has diagnosed Red Star as having Bipolar I Disorder, most recent episode mixed, in partial remission; Alcohol Dependence, in a controlled environment; Cannabis Dependence, in a controlled environment; Antisocial Personality Disorder; and Fetal Alcohol Syndrome (by history). (Gov't Ex. 4 at 19.) Finally, Dr. Bard has diagnosed Red Star with Bipolar I Disorder, most recent episode mixed, in partial remission; Alcohol Dependence, in a controlled environment; Cannabis Dependence, in a controlled environment; Borderline Personality Disorder; and Fetal Alcohol Effect (rule out fetal alcohol syndrome). (Resp. Ex. 2 at 14.)

[4] Both Dr. Demby and Dr. Bard agree that Red Star currently has Bipolar I Disorder. (Gov't Ex. 4 at 19; Resp. Ex. 2 at 14.)

5

C.  <u>Serious Difficulty Refraining</u>

The real point of dispute in this case involves the third element under the Adam Walsh Act, *i.e.*, whether the government has proven, by clear and convincing evidence, that Red Star, if released, "would have serious difficulty in refraining from sexually violent conduct" as a result of his serious mental illness, abnormality, or disorder.  18 U.S.C. § 4247(a)(6).  The determination under this prong requires the court to consider Red Star's volitional control over his actions understood in relation to his mental illness, and it is also informed by the constitutional constraints on the civil commitment scheme.  In <u>Kansas v. Crane</u>, 534 U.S. 407 (2002), the United States Supreme Court held that in order to civilly commit someone for sexual dangerousness "there must be proof of serious difficulty in controlling behavior."  <u>Id.</u> at 413. The Supreme Court noted that this standard allowed courts wide discretion in relying on a number of different factors relevant to sexual dangerousness.  The standard did not have "a particularly narrow or technical meaning;" nor was it demonstrable with "mathematical precision."  <u>Id.</u>

As a result, the court does not construe this criterion for commitment to require proof of any statistical probability of reoffense.  The Adam Walsh Act does not ask the finder of fact to determine exactly how likely the respondent is to reoffend, but whether he will have "serious difficulty" in refraining from doing so.  Recidivism rates are circumstantially relevant to the serious difficulty inquiry because offenders who continually expose themselves to punishment may be presumed to have the most difficulty refraining from sexual reoffending.  But the ultimate question called for by the Adam Walsh Act concerns the self-control of an individual, not the statistical re-arrest patterns of a given population.  Thus, the court considers the

6

recidivism rates associated with Red Star's actuarial scores,[5] but affords them less weight than Red Star's past and current conduct, and the testimony of the experts as a whole.

Here, both Dr. Demby and Dr. Phenix testified that, in their opinions, Red Star, if released, would have serious difficulty in refraining from sexually violent conduct. In contrast, Dr. Bard opined that Red Star would not have serious difficulty in refraining from sexually violent conduct if released. In reaching his conclusion with regard to this element, Dr. Bard relied heavily on the recent improvement in Red Star's behavior. (Resp. Ex. 2 at 18 ("[T]he most important factor in this case is the fact that Mr. Red Star has been able to drastically change his behavior during the past 16 months at [the Federal Medical Center in] Butner.").) This improvement appears to be attributable in large part to a change in Red Star's medication regimen. At the evidentiary hearing, Dr. Owens, who is currently Red Star's treating physician, testified to prescribing a change in Red Star's medication regimen in November 2009. Dr. Owens administered Abilify, a mood stabilizer, and Celexa, an antidepressant, to treat Red Star's Bipolar Disorder. Dr. Owens testified that since this change in medication, Red Star has experienced the positive changes of a stabilized mood and less impulsive acting out and anger.

---

[5] Dr. Demby gave Red Star a score of 9 on the Static 99-R actuarial instrument. She testified that offenders from a preselected high risk and needs sample with the same score as Red Star have been found to sexually reoffend at a rate of 52.4% within five years and 61.9% within ten years. (Gov't Ex. 4 at 25-26.)
    Dr. Phenix testified that she used several actuarial instruments to assist her in determining whether Red Star meets the criteria for commitment. Dr. Phenix scored Red Star on the Static 99-R with results identical to those of Dr. Demby. She also utilized the Static-2002R, giving Red Star a score of 8. Using the high risk/need sample, offenders with this score have been found to sexually reoffend at a rate of 35.2% in five years and 46.0% in ten years. Dr. Phenix also used the Minnesota Sex Offender Screening Tool-Revised, giving Red Star a score of 13, which would indicate a 40% probability of rearrest for a sexual offense within 6 years. She also found Red Star to score in the High-Moderate range of the Hare Psychopathy Checklist, revised, second edition and in the Very High range of the Structured Risk Assessment-Forensic Version. Neither of these instruments provided a percentile risk assessment. (Gov't Ex. 2 at 57-68.)
    Like Dr. Demby and Dr. Phenix, Dr. Bard gave Red Star a score of 9 on the Static-99R. However, Dr. Bard utilized the routine sample as opposed to the high risk/need sample used by Dr. Demby and Dr. Phenix. Using the routine sample, Dr. Bard noted that a score of 9 is associated with an estimated rate of recidivism of 24% over five years. Dr. Bard stated that no research supports the use of the high risk/needs sample. (Resp. Ex. 2 at 16-17.)

7

Case 5:06-hc-02222-BR-JG   Document 110   Filed 01/03/12   Page 7 of 10

(See also Resp. Ex. 2 at 18-19; Gov't Ex. 4 at 8-9.)  Dr. Owens further testified that he prescribed an additional antidepressant in September 2011.[6]

The court finds that Dr. Bard's significant reliance on Red Star's most recent behavior is misplaced.  In so finding, the court credits the testimony provided by Dr. Demby with respect to this issue.  While Dr. Demby acknowledges that Red Star has shown some improvement with recent treatment, she opines that it is beyond Red Star's capacity to change his patterns outside of the highly structured environment in which he now finds himself.  (Gov't Ex. 4 at 28.)  She believes that Red Star's current environment "acts as a substitute for the lack of self-control necessary to contain the risk he poses to those around him."  (Id.)

The court agrees with Dr. Demby that Red Star will likely decompensate if he is released from his highly structured environment.  This conclusion is supported by Red Star's own testimony at the evidentiary hearing and by the records in this case.  Red Star himself has admitted that he has had difficulty controlling his urges.  He also testified that he did not take his medications for five days in June 2011 and that Dr. Owens convinced him to continue taking them.  He further testified that he stopped taking his medications for a weekend in August 2011 after he determined that he was not getting enough attention.

In addition, the prison records in this case demonstrate that since he began taking Abilify and Celexa, Red Star communicated to staff members on several occasions that he did not want to or was not going to take the medications (Gov't Exs. 59, 60, 61, 63), or that he had in fact not

---

[6] Dr. Owens also stated that it would be wise for Red Star to stay on these medications for the rest of his life.  He opined that if Red Star missed a week of these medications, a manifestation of his prior behavior would be expected.

8

taken the medications (Gov't Exs. 61, 63, 69).[7] On 20 June 2011, Red Star stated with respect to his medication, "When I get out, I'm not going to take that shit." (Gov't Ex. 63.) On at least one occasion, he has expressed doubt about his ability to remember to take his medication if released to the community. (Gov't Ex. 65.)

Furthermore, Red Star has repeatedly engaged in sexual behavior that is out of place while in custody. He has had a very extensive history of misconduct from 1996 to 2009, including possessing sexually explicit photographs, exposing himself and making sexual threats to female staff. (See, e.g., Gov't Exs. 2 at 25-40; 4 at 17-18; 29-32, 40, 42, 46-47, 50, 52, 54.) In addition, as recently as 11 February 2011, Red Star was cited for possession of unauthorized materials, which included numerous pornographic pictures. (Gov't Ex. 62.) The court notes that this conduct occurred after Red Star's medication regimen was changed in 2009. Because Red Star has been unable to control his behavior even in the most supervised setting, the court concludes that he will have serious difficulty in refraining from sexually violent conduct if released.

The court also finds that Red Star's lack of self-control is exacerbated by his antisocial attributes and substance abuse addictions. Many of his past behaviors appear to have arisen from a combination of his personality traits and serious mental illness. Moreover, Red Star appears to have little to no ability to manage his mental illness. Thus, despite the recent improvements in his conduct, the court is persuaded that Red Star has not yet acquired the tools that he will need

---

[7] The court further notes that there are prison records which show that there are times when Red Star did not take his medication even though he reported that he had in fact taken it. (Gov't Exs. 66-67.)

9

to control his deviant sexual behavior without serious difficulty.[8]  Accordingly, the court concludes that the government has met its burden of proving the third element under the Adam Walsh Act by clear and convincing evidence.[9]

### III.  CONCLUSION

For the foregoing reasons, the court finds, by clear and convincing evidence, that Red Star is a sexually dangerous person under the Adam Walsh Act.  It is hereby ORDERED that Red Star be committed to the custody and care of the Attorney General pursuant to 18 U.S.C. § 4248.

This 3 January 2012.

                                                                            _____
                                                                            W. Earl Britt
                                                                            Senior U.S. District Judge

---

[8] The court has also considered the fact that Red Star has been ordered to complete a ten-year term of supervised release after he is released from federal custody on his most recent conviction. (Gov't Ex. 23.)  The court finds that the term of supervised release is not sufficient to overcome all of the evidence in this case which demonstrates that Red Star will have serious difficulty in refraining from sexually violent conduct if released.

[9] In determining that Red Star is a sexually dangerous person under the Adam Walsh Act, the court did not consider the deposition testimony of Red Star's father, Wallace Red Star.  The government's objection to the admission of this testimony is sustained, and the testimony is excluded from the record in this case.